13  321.
e110 477

Church Wardens of St. Louis Church of New Orleans *v.* J. A. Bon-
neval et al.—F. Daubert and Thomas Hawthorn, appellants.

Under the Act of 1848, relative to Auctioneers (Session Acts, p. 96), the citizen who is desirous of doing
an auction business, must execute and deliver to the Recorder of the Parish (to the Recorder of
Mortgages in New Orleans) his bond, with security, *previous to entering upon the transaction of such
business.*
But the application by the auctioneer for a license, to the Auditor, although it be commanded, yet it is
not made a condition precedent to the exercise of the business of auctioneer.
The obligation of the sureties upon the bond commences from the recording of the bond in the mort-
gage office.
Parties who put their property into the hands of auctioneers for sale, have only to address themselves
to the office of the Recorder of Mortgages of the Parish, for the purpose of ascertaining whether an
auctioneer's bond is recorded.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.
Robert Preaux, for plaintiffs and appellees.   *Dufour* and *Budd & Lambert,*
for appellants.

Buchanan, J.   This is a suit brought, under the 4th section of the Act of
1848, relative to auctioneers, (Session Acts, page 96,) against an auctioneer and
the sureties on his official bond, for the proceeds of an auction sale made for ac-
count of plaintiffs, which were not paid over to them by the auctioneer.

The proof of the sale by auction, and of the failure of the auctioneer to pay
over the proceeds, is complete.   It is also proved that the defendants signed the
bond, as described in the petition.

The defence, in this court, has turned altogether upon the fact that no license
was issued to *Mr. Bonneval,* by the Auditor of Public Accounts, to perform the
duties of an auctioneer, as contemplated by the fifth section of the Act of 1848.
It is contended by the sureties who have appealed, that until such license was
issued, the sureties on the bond were not bound for the faithful performance of
any business done by *J. A. Bonneval,* the principal in the bond, as an auctioneer.

This construction does not seem warranted by the terms of the statute.

·   Section 1st enacts, that any citizen of the State may become an auctioneer for
the parish of which he is a qualified voter, and be authorized to sell any real or
personal estate at public auction or vendue, on giving bond and security for the
faithful performance of his duties according to laws regulating auction sales and
the provisions of this Act.

Section 2nd.   That before entering upon his duties he shall execute his bond,
payable to the Auditor of Public Accounts, and his successor in office, with good
and solvent securities, conditioned for the faithful performance of all duties re-
quired by law, towards all persons who may employ him as an auctioneer, and for
the prompt payment of the taxes or commissions payable to the State, and of all
sums which he shall receive in his official capacity belonging to other persons, &c.

Section 4th.   The Recorders of the several parishes, and the Recorder of Mort-
gages of the city of New Orleans, shall require of all persons who may wish to
become auctioneers to execute and deliver to them said bond in duplicate, one of
which bonds they shall transmit to the Auditor of Public Accounts, the other
they shall keep in their offices ; an authentic copy of which they shall deliver to
any person who may wish to sue thereon for his own benefit for a violation of the
conditions thereof, &c.

41

Section 5th. That in order that full faith and credit may be given to his acts, every auctioneer who shall have complied with the foregoing provisions of this Act, shall demand and take out annually, from the office of the Auditor of Public Accounts a license with authority to do and peoform all the business properly belonging to an auctioneer. In the French text: " l'autorisant à faire toutes les affaires qui sont du ressort d'un encanteur."

Analysing these different sections, we find that the citizen who is desirous of doing an auction business must execute and deliver to the Recorder of Mortgages, his bond with security, *previous to entering upon the transaction of such buisiness*. But the application for a license to the Auditor, although it be commanded, yet it is not made a condition precedent to the exercise of the business of an auctioneer.

Parties who put their property into the hands of auctioneers for sale, have only to address themselves to the office of the Recorder of Mortgages of the parish, for the purpose of ascertaining whether an auctioneer's bond is recorded. That is the reference which this statute points out, and in case of a violation of trust thus reposed, it is there that the party injured must obtain the authentic evidence of the liability of other persons, as sureties, for the acts of the party trusted.

The bond in this case was made on the 7th December, 1854. It was recorded in the office of the Recorder of Mortgages in New Orleans on the same day. The condition of the bond is, " to secure the faithful performance of all the duties incumbent upon him, the said *J. A. Bonneval*, the duly appointed auctioneer for the parish and city of New Orleans, *to serve from and after the 7th day of December*, 1854."

The praintiffs employed *Bonneval* to make sales at auction for them, on the 21st and 22d days of December, 1854.

By their own act, the appellants have given the standing and credit of a legally qualified auctioneer to *Mr. Bonneval*, at the time when he sold the plaintiff's property, and collected the proceeds ; and their obligation as sureties commenced from the recording of the bond in the mortgage office.

There is proof in the record that it was to the knowledge of the Auditor of Public Accounts, that *Bonneval* was making sales by auction, on which there were duties accruing to the State, and that account was rendered by *Bonneval* to the Auditor of such sales. A book of auction sales commencing December 9th, 1854, and containing one hundred and sixty folios, signed at the beginning and end by the Auditor of Public Accounts, and certified in several places as having been examined by the Auditor, on the 9th January, 1855, and on the 7th July, 1855, is in evidence. Defendants excepted to the admission of this evidence, on various grounds, principally because the said auction sales book was not the best evidence of *Bonneval* being an auctioneer ; that a license should have been produced. The Auditor has certified expressly, that *Bonneval* had no license from him during the period embraced in that book. The book is therefore the best evidence of the exercise of the business of auctioneer by *Bonneval* in the years 1854 and 1855 to the knowledge of the Auditor. To that officer is given by law the supervision of the interests of the State in auction sales. It is his duty to require a sworn statement from the several auctioneers of the State duties on auction sales, and to compare such statements with the entries in the auctioneers' books.

Acts of 1850. King's Revised Statutes, verbo Auction.

A doubt has been raised in argument, whether the book in question be indeed the book of *Bonneval*, as the name of the auctioneer who made the sales is not

mentioned in the book. But we view the proof on this subject as satisfactory. <span style="float:right">Sт. Louis Church<br>v.<br>Bonneval.</span> The entries in the book are in *Bonneval's* handwriting; and the entry under date of the 22d December, 1854, of the sales of pews in the Church of St. Louis, by order of the churchwardens, which is the subject of the present controversy, shows conclusively that the auctioneer, of whose business this book is the record, could have been none other than *Bonneval.*

Judgment affirmed, with costs.